**Harold KONIGSBERG, Appellant,**

v.

**Pasquale J. CICCONE, M.D., etc., et al., Appellees.**

**No. 19326.**

United States Court of Appeals Eighth Circuit.

Oct. 24, 1969.

Frank A. Lopez, New York City, for appellant; Harold Konigsberg, pro se.

Charles E. French, Asst. U. S. Atty., Kansas City, Mo., for appellees; Calvin K. Hamilton, U. S. Atty., and Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., on the brief.

Before MEHAFFY and GIBSON, Circuit Judges, and MILLER, Senior District Judge.

MEHAFFY, Circuit Judge.

Harold Konigsberg, petitioner, an inmate of the Medical Center for Federal Prisoners at Springfield, Missouri, appeals from an order denying his application for a writ of habeas corpus. He is serving a 10-year sentence imposed in 1963 by the United States District Court of New Jersey following a jury trial. In 1964, after serving a state sentence, petitioner was imprisoned in the Federal Correctional Institution at Danbury, Connecticut. On August 31, 1965, upon direction of the Attorney General petitioner was transferred to the Springfield, Missouri institution pursuant to 18 U.S.C. § 4082.

In a full evidentiary hearing on petitioner's application conducted by The Honorable Elmo B. Hunter, United States District Judge for the Western District of Missouri, Western Division, petitioner was allowed to present and fully develop twenty grievances and conditions, most of them asserted to be violative of his constitutional rights. Judge Hunter found some merit to a

few of petitioner's charges, but in an exhaustive order reported at 285 F.Supp. 585 (W.D.Mo.1968), aside from specifically ordering respondent Ciccone to take certain actions relating to attendance at religious services, Judge Hunter denied the writ. We affirm.

A detailed statement of petitioner's numerous contentions is unnecessary and would be repetitious in light of Judge Hunter's elaborate treatment of the matter. In his brief before us, petitioner capsulized into five assignments of error his argument for reversal asserted to be violative of his constitutional rights.

The point that merits our most careful consideration is the serious charge that the district court should have vacated a New York state conviction because it resulted from an illegal transfer of petitioner from the Medical Center in Springfield to New York to stand trial while he was certified as insane under 18 U.S.C. § 4241 and that this action violated his Fifth, Sixth and Eighth Amendment rights under the Constitution.

In September, 1965, petitioner was examined by the Board of Examiners of the Medical Center in Springfield, Missouri pursuant to § 4241. The Board reported to the Attorney General that petitioner was of unsound mind on November 16, 1965, and the Attorney General caused an order of certification of insanity to issue on April 5, 1966. In October, 1966, the Attorney General authorized the removal of petitioner to New York to stand trial for extortion and related counts on a writ of habeas corpus *ad prosequendam*. At the New York state trial petitioner was convicted and sentenced to a term of 33 to 40 years.

Petitioner contends that his "release" to the New York state authorities on the writ was an illegal action vitiating his state court conviction and sentence. He was not actually released but was housed under federal authority as a federal prisoner and accompanied by a federal marshal at all pertinent times. Upon conclusion of the New York trial, he was returned to the Medical Center at Springfield. It is argued that the Attorney General lacked authority to allow him to be tried on the state offense prior to a decertification indicating that he had been restored to sanity or health. On August 21, 1967, after his return to Springfield, petitioner's administrative status was changed to that of a sane person requiring medical care and treatment not available in an existing penal institution.

Petitioner relies principally upon Weldon v. Steele, 125 F.Supp. 667 (W.D. Mo.1954), where the court construed § 4241 as it related to another question. The issue there was whether the failure of the Attorney General to provide in his commitment order that the prisoner was to be held until the maximum sentence was served, without credit for good time or commutation, resulted in allowing good time to accrue to the prisoner while he was confined under § 4241. The court held that, since the statute provides for the loss of good time during a § 4241 commitment, the Attorney General could not waive the statute so as to permit the prisoner to be credited with good time. This case is clearly inapposite and has no bearing on the question for our determination.

Under 18 U.S.C. § 4085 the Attorney General has the authority to permit a prisoner under a federal sentence to be taken from the institution where he is confined to be tried in a state court. The exercise of this authority is discretionary, however, and the Attorney General need not transfer a prisoner. This was practiced as a matter of comity prior to the enactment of the statute. Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879 (1922). Under 28 C.F.R. § 0.96, "the Director of the Bureau of Prisons is authorized to exercise or perform any of the authority, functions, or duties conferred or imposed upon the Attorney General by any law relating to the commitment, control, or treatment of per-

sons (including insane prisoners and juvenile delinquents) charged with or convicted of offenses against the United States. \* \* \* " Section 4082 provides that the Attorney General may designate the place of confinement and may at any time transfer a person from one place of confinement to another. This has been construed to apply to patients in medical centers as well as other institutions. Holland v. Ciccone, 386 F.2d 825 (8th Cir. 1967), cert. denied, 390 U.S. 1045, 88 S.Ct. 1646, 20 L.Ed.2d 307 (1968). The court in *Holland* said at page 827:

"But this court more than once has held that 18 U.S.C. § 4082, and its companion sections, place responsibility upon the Attorney General and not upon the courts to designate the place at which a convicted prisoner shall serve his sentence and receive medical treatment, if any is needed, and that the administrative determination of this issue is not subject to review in a habeas corpus proceeding. (Citing cases.) The administrative decision, once made, and in the absence of a showing of arbitrariness or capriciousness, is conclusive."

In Garcia v. Steele, 193 F.2d 276, 278 (8th Cir. 1951), the late Judge Sanborn, speaking for this court, said:

"It is our opinion that the authority to classify federal prisoners for the purposes of confinement, care and treatment, has been conferred exclusively upon the Attorney General, and that his determinations, made in the exercise of that authority, are not subject to review in habeas corpus proceedings."

The fact that petitioner had not been decertified by authorities at the Medical Center at the time he was examined in the state court on the issue of insanity does not infringe upon his rights since the certification did not prove, in itself, that he was not competent to stand trial. In McIntosh v. United States, 176 F.2d 514 (8th Cir. 1949), cert. denied, 338 U.S. 876, 70 S.Ct. 137, 94 L.Ed. 537 (1949), McIntosh was serving a sentence in the United States Penitentiary at Terre Haute, Indiana when he was certified as insane and was sent by the Attorney General to the Medical Center at Springfield. About four months after he arrived there—and while he was still certified as insane—he escaped and stole a plane to make his getaway. Subsequently he was tried and convicted of this offense, and we affirmed on appeal.

Even if petitioner had been decertified by the Medical Examiner at Springfield, the question of his competency to stand trial in a state court, as well as his competency at the time of the commission of the offense, was a matter for the state court and the conviction is not to be set aside unless clearly arbitrary or unwarranted. Butler v. United States, 384 F.2d 522, 523 (8th Cir. 1967), cert. denied, 391 U.S. 952, 88 S.Ct. 1854, 20 L.Ed.2d 865 (1968). And since the state court made the determination that he was competent to stand trial, he was not denied any of his constitutional rights by reason of the fact that he had not previously been certified sane by the Medical Center.

■ In the determination of the competency of an accused, the certification by the hospital or the medical testimony itself is not the decisive factor and is not binding on the triers of fact. Feguer v. United States, 302 F.2d 214, 236 (8th Cir. 1962), cert. denied, 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110 (1962). The finding by the court, whether state or federal, is the determinative finding. Gunther v. United States, 94 U.S.App.D.C. 243, 215 F.2d 493 (1954). In *Gunther*, the court said:

"While the judge may be assured of such a person's competency without a full-scale hearing, \* \* \* [it is] clear that neither a doctor's certificate nor other 'medical testimony' was contemplated as a substitute for the essential 'finding of the court.' " (215 F.2d at 496).

Neither did the manner in which petitioner was brought before the state court deprive it of jurisdiction to try him. In Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), the Court held that the power of a court to try a person for a crime is not impaired by reason of the fact that he is brought within the court's jurisdiction by forceful abduction.[1]

There are many forms and degrees of insanity. While a person might have a mental disorder which indicated that treatment in a mental institution was desirable, yet he could be at the same time entirely competent to stand trial for a criminal offense.[2]

■ For the reasons above stated, we find that petitioner is not entitled to habeas relief and we are not authorized to vitiate the New York state conviction by reason of petitioner's transfer under the circumstances that existed. Furthermore, no facts were adduced in the district court to indicate that petitioner's trial was tainted by the pretrial transfer and, therefore, no relief is warranted. Sheldon v. State of Nebraska, 401 F.2d 342 (8th Cir. 1968). As a matter of fact, petitioner's constitutional right to have a speedy trial was protected by the action of the Attorney General in making the trial possible.

We have considered the other assignments relied upon by petitioner in this appeal which related to his asserted mistreatment; the withholding of his property by the Government; and the denial of access to the courts and counsel, and are in complete agreement with Judge Hunter's aforementioned published opinion and order, and for that reason adopt that opinion and order insofar as it relates to these other issues.

The order of the district court denying issuance of a writ of habeas corpus is affirmed.

1. Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509 (1952), was quoted with approval in Sewell v. United States, 406 F. 2d 1289, 1292–1293 (8th Cir. 1969). See also and compare Hunt v. Eyman, Warden, 405 F.2d 384 (9th Cir. 1968), cert. denied, 394 U.S. 1020, 89 S.Ct. 1644, 23 L.Ed.2d 46 (1969); O'Shea v. United States, 395 F.2d 754 (1st Cir. 1968); McCord v. Henderson, 384 F. 2d 135 (6th Cir. 1967).

2. The court in Johnson v. United States, 344 F.2d 401, 406 (5th Cir. 1965), said: "Since there are many shades and phases of mental disorders as well as degrees of severity, and since the law— especially criminal law—attaches different consequences to the presence of a particular mental disorder in a defendant at different stages of the trial process, the Judge's order should indicate the distinctive medico-legal issues involved."