**UNITED STATES of America,
Plaintiff,**

v.

**Esther McAllister Davis MUNCASTER,
Defendant.**

**Cr. No. 12643–N.**

United States District Court,
M. D. Alabama, N. D.

Feb. 11, 1972.

D. Broward Segrest and David Byrne, Asst. U. S. Attys., Montgomery, Ala., for plaintiff.

## ORDER

VARNER, District Judge.

Defendant-Movant, being in custody under an order of this Court entered pursuant to pertinent provisions of law, 18 U.S.C. § 4244, now moves this Court to vacate its order directing an examination as to her mental condition. The motion [1] is grounded as follows: (A)

---

1. A somewhat similar motion was filed by Movant's court-appointed attorney whose services Movant rejects (without personal or professional bias against said attorney) on grounds that she has a right to represent herself or be represented by an attorney of her choice. This matter, having been raised in another proceeding,

That the fact that this Court set for hearing a petition previously filed by Movant is conclusive that Movant is and was sane and mentally competent to understand the proceedings and assist in her own defense; and (B) That the original motion upon which the order for mental examination was based was and is invalid because it was not made in good faith, the grounds thereof were frivolous, it was not signed under penalties of perjury, and the affidavit of notice to Movant thereon was false. The parties have tried the case on the further ground (C) That the statute, 18 U.S.C. § 4244, is unconstitutional in that it provides a way that a defendant may be incarcerated without a hearing. Various theories of unconstitutionality will be separately treated hereinafter.

■ The nature of the statute itself[2] is relevant to the question of what issues may be considered by this Court on motion to vacate. The purpose of this statute is to protect those defendants, arrested but not yet tried in criminal cases, who have given reasonable cause for one to doubt their ability to aid in their own defense. The statute places full responsibility on the judge, the attorney for the United States, and the defense attorney[3] to initiate an investigation into the competency of any such defendant if his or her conduct is such as to reasonably cause one to believe that the defendant may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or her. The ultimate aim of the proceeding is that a full and fair hearing may be had by a judge and a determination may be made that the defendant shall not be tried if her mental condition is such that she either is unable to understand the charge

against her or is unable to aid in her defense. If, however, a defendant is found competent, after a competency examination and a hearing by the Court, then the defendant must stand trial for the criminal charges pending against her and she will have a trial by jury of her defenses, if any, to those charges. One such possible defense which a defendant may offer in the jury trial is that the defendant is not guilty by reason of insanity at the time the alleged crime was committed. A defendant's ultimate sanity may be determined by the trial jury even though the judge may previously adjudge her competent to stand trial.

■ It is clear that the purpose of 18 U.S.C. § 4244 is purely precautionary and involves only a preliminary question —that is—whether there is reasonable cause to believe that the defendant "may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense."[4] Once this preliminary matter of reasonable cause is submitted, the Court has a mandate from Congress to assure full examination and establishment of mental competency at a hearing as a condition precedent to any criminal trial. In order to assure any defendant, whose sanity may be questioned, of a fair opportunity to aid in his defense, Congress assured to such a defendant an expense-free examination as a prerequisite to a final sanity hearing. The hearing contemplated by Section 4244 necessarily follows after the mental examination. At that hearing, the defendant has an opportunity to present such witnesses as he may see fit to establish either his sanity or insanity. A finding by the judge that the defendant is competent to stand trial is not admissible at his criminal trial to

---

is not presented as an issue in this case. The attorney's motion raises no justiciable issues not justiciable under the issues of instant motion.

2. See Appendix A.

3. At the time the motion for examination was filed no defense attorney had been

appointed as Movant insisted that one not be appointed.

4. In this case the original allegation was that there was "reason to believe that the mental condition of the defendant renders her unable to understand the charges against her or properly assist in her own defense."

prejudice any possible defense of insanity presented to the jury by the ultimate defense of the defendant.

 By its very nature, the statute provides a non-adversary, preliminary procedure to assure protection of an insane defendant. It places the burden of establishing evidence of reasonable cause to doubt the sanity of the defendant on the prosecutor. That same prosecutor may later have the duty of establishing the defendant's sanity in order to insure conviction if guilt be otherwise proved. At this preliminary stage of the proceedings, Congress has contemplated that, once "reasonable cause" has been established, the proceeding prior to the hearing at which the trial court determines competency to stand trial is non-adversary and may be conducted without a hearing.

 What then, asks the defendant of her "due process" rights to a hearing before she may be deprived of her liberty?[5] While the statute contemplates no hearing, this hearing may be afforded upon receipt of the original petition or, as here, Petition for Redress of Grievances, or, as here construed, Defendant's Motion to Vacate her commitment. (See Appendix B)

 On such hearings, review is limited to the initial issues, first, whether the evidence originally submitted constituted "reasonable cause to believe that the defendant may be insane or otherwise so mentally incompetent as to be unable to understand the proceedings" against the defendant or aid in the defense; second, whether or not the motion was filed in good faith or is frivolous; third, whether Section 4244 is or is not constitutional;[5] and, fourth, (assuming that the other issues were decided without error) what manner of psychiatrical examination is reasonable under the circumstances. United States v. Varner, 467 F.2d 659 (5th C.C.A. 1972).

 Because of Defendant's insistence upon representation of herself, the hearing was not conducted in its usual form but undenied evidence was submitted by the parties that Defendant did the acts alleged in the United States Attorney's motion to be the basis for reason to doubt her sanity. It was not substantially denied that, upon the United States Marshal's attempt to arrest Robert Muncaster, husband of Defendant, Mrs. Muncaster placed herself between the man she knew to be the United States Marshal and her husband, screaming abusive language and ripping the Court's order from his grasp, striking and kicking United States Marshal Lunceford and Federal Bureau of Investigation Agents Graffagnini and Frye, and telling them, in substance, that they had taken her husband and declared war on her and that she would get a gun and kill each of them. There was further undenied evidence that Defendant had previously told Assistant United States Attorney D. Broward Segrest that, "If you make war on me and my children, I will make war on your children."

The Defendant offered, as evidence of her competency or to refute any reasonable doubt of her competency, to require the United States to submit copies of briefs she stated she had prepared in cases for her son and her husband during the immediately preceding two and one-half years. The United States Attorney offered to show that not one of these cases had been won by a defendant, and he offered evidence of a recorded hearing under Rule 5 of the Federal Rules of Criminal Procedure before the United States Magistrate Leonard wherein Defendant was informed of the charges against her in this case and re-

---

5. This question has been disposed of adversely to the defendants in Stone v. United States, 9 Cir., 358 F.2d 503, and Caster v. United States, 319 F.2d 850, 852 (5 C.C.A. 1963), on the theory that no hearing or counsel is required in non-adversary proceedings. A public hearing at this stage could well eventually effect a complete disservice to a defendant not competent to make intelligent decisions— indeed, such a defendant may so publicize prejudicial aspects of his case as to assure his ultimate conviction.

portedly was disorderly. All this evidence was excluded as irrelevant under the authority of 18 U.S.C. § 4244 as interpreted in United States v. Varner, supra; Caster v. United States, 319 F.2d 850, cert. den. 376 U.S. 953, 84 S.Ct. 972, 11 L.Ed.2d 973.

The question was whether the facts set out in the motion as the basis for reason to doubt Defendant's sanity were wholly insufficient to form a reasonable basis for belief that Defendant may be incompetent, whether such motion was frivolous, and whether such motion was filed in good faith. Evidence of mental competence, past, present or future, other than that set out in the United States Attorney's motion was irrelevant. Those matters are reserved for the competency hearing.

Evidence of truth of the statements made in the motion of the United States Attorney and of prior confrontations between Mrs. Muncaster and various attorneys was admitted for such light as it might shed on good faith of the attorney for the United States who filed the motion.

There was evidence that Mrs. Muncaster had harassed Assistant United States Attorney Segrest by sending him parking tickets she claimed he had earned by causing her to overpark at times when she said she was working on the cases for her son and her husband and by referring to him in public and to his face in unflattering terms. However, the evidence did not show that Mr. Segrest or any other attorney for the United States held any particular grudge against Mrs. Muncaster but that, on the contrary, Mr. Segrest declined to report or prosecute Mrs. Muncaster for her statements in the summer of 1971 to the effect that, "When you make war on me and my children, I will make war on your children." There was no denial that such a statement was made in reference to his prosecution of her son under federal indictment.

Mrs. Muncaster takes the position that her actions in assaulting three of the four federal officers participating in her husband's arrest on a District Court order issued in conformance with the mandate of the Supreme Court of the United States were justified by her right to defend her home and family and that she had a right to see the copy of the order the Marshal sought to serve on her husband or, in lieu thereof, to assault the officers seeking to execute the same. She also contends that, when she initially had the altercation with the Marshal, the officials' restraint of her constituted an arrest without a warrant which justified her assault on them or, at least, was a logical explanation of her conduct which otherwise might constitute reasonable cause to question her competency. The officers had a right to arrest her without a warrant for an offense committed in their presence, 18 U.S.C. §§ 3052, 3053. Irrespective of this right, one may reasonably question the competence of one who physically attacks an obviously superior force.

She further apparently takes the position that her own arrest, either by city officers' holding her for F.B.I. agents or by the agents themselves, may have justified her conduct. A warrant for her arrest was then outstanding, and Rule 4(c) (3), Federal Rules of Criminal Procedure, provides:

> "The officer need not have the warrant in his possession at the time of the arrest, but upon request he shall show the warrant to the defendant as soon as possible."

Even if Mrs. Muncaster's arrest were without a warrant or illegal, that fact was not relevant to her earlier actions which the United States Attorney asserts as reasonable cause.

In brief, Movant asserts that Section 4244 is unconstitutional for several separate reasons.

I. Movant insists that the statute may provide a tool for her incarceration with no notice, no hearing, no jury, no counsel, and no judge. This will be considered with her claim that § 4244 is a Bill of Pains and Penalties.

While her status to raise this point may be questionable since she now has been afforded a hearing, the serious possibilities of infringement bear exploration. Any detention of a criminal before a hearing may, in a sense, be an encroachment on this deprivation-of-liberty-without-a-hearing theory, but this does not mean it lacks in due process of law. There are those occasions in the administration of criminal justice when alleged criminals must be detained for reasonable times before hearings may be accorded them. Detentions between preliminary hearing and making of bond, between arrest and preliminary hearing, between the making of bond and the approval of bond, and between arrest and trial when no bond is made are all slight but necessary encroachments on the right to a hearing but, because they are necessary and continue only for reasonable times, the right to a hearing may be delayed in those situations for reasonable periods of time. When and if such detention becomes unreasonable, habeas corpus is available for review thereof. See, Anno. 100 L.Ed. 420; 32 ALR2d 434.

II. The section, Movant asserts, effects a deprival of her right not to give evidence against herself (Amendment V). Evidence given by the accused in such examination may not be used because of prohibitions in 18 U.S.C. § 4244. The Court's finding that defendant is sane may not be used against the defendant to prove her sanity and resulting responsibility for the crime, 18 U.S.C. § 4244. Testimony of others in the sanity hearing would be available only on call of those witnesses under the "hearsay" rule. So Defendant's rights not to give evidence against herself are fully protected.

III. Defendant suggests that she should be solely responsible for deciding whether or not a psychiatrical examination is required. If she is competent, she needs no examination, and the examination will not help her (it would only prove her sanity and her responsibility for the crime but could not be used against her). If she is incom-

petent, she cannot make the decision, and her agreement thereto is void. Obviously, her consent is a vain and useless thing.

IV. Movant's insistence that the statute provides for cruel and unusual punishment and excessive bail, falls victim of the same rule of reason and is subject to the same limitations.

V. Movant insists that the statute unconstitutionally (Constitution, Article 1, § 9) suspends the Writ of Habeas Corpus. The statute, per se, does not prohibit a defendant's seeking such a remedy, even before the commitment. It would appear that the hearing under such a writ would be limited to the legality of the detention and matters such as guilt of the crime and actuality of insanity would not ordinarily be at issue. These questions were presented by Movant by her Motion to Vacate Sentence.

The constitutional authority for § 4244 appears to lie in Constitution, Article 1, § 8, as follows:

" * * * The Congress shall have Power to * * * provide for the common Defence and general Welfare of the United States. * * * (and) To make all laws which shall be necessary and proper for carrying into Execution the foregoing Powers * * *."

Movant likens this hearing to trial for a crime. This is purely a preliminary hearing to be sure Defendant is properly defended in the criminal charge against her. Since she has declined the help of qualified attorneys, it is most important that her competency be thoroughly investigated before her trial.

On cross-examination of Mr. Segrest, Assistant United States Attorney, in response to Mrs. Muncaster's question regarding his opinion of her, witness responded, in effect, that, after over two and one-half years of reading her briefs and receiving her harassment, he felt that she was a highly intelligent and Christian woman but that he doubted that she was competent to properly aid in her defense; that her briefs and arguments contained occasionally brilliant,

but often completely irrelevant, observations and arguments; and that he had on occasions felt that she was seeking to have a federal criminal charge filed against her.

During the trial the Court observed Mrs. Muncaster to be a keenly intelligent, highly emotional, and very complex individual. Her demeanor in this hearing was usually restrained and respectful. On occasions, she appeared to be near tears but often broke into near open laughter, sometimes without apparent cause when no one else in the courtroom saw cause for levity. Obviously, nervousness of one in unfamiliar circumstances is not surprising.

This Court is mindful that the subject of this proceeding is an idealist, that terrible crimes and even wars have been inflicted in the name of idealism, and that this subject has threatened to kill for the sake of her idealistic principles. Should this subject be released on bond without a thorough evaluation of her competency to aid in her own defense, this Court would be completely insensitive to the rights of the Defendant not to be put to trial without a fair opportunity to defend herself. Should she be released on bond without a thorough evaluation of her sense of responsibility for any crime she might commit, this Court would be insensible to the rights of the public (and particularly of those threatened by the subject) to be protected from a person who, by her conduct, has demonstrated extreme peculiarities if not doubt of sanity. Where a subject, suspected of mental illness, has threatened to kill, a court must be particularly careful to afford legal protections to both the subject and those threatened. A release of such a subject without extreme precautions could be compared to a license to kill. A plea of insanity in such a case would be supported by the affidavit of a prosecuting attorney. Such a chance is, and must be, unacceptable to this Court. The Constitution has never been held to require release of the criminally insane.

This Court, upon considering the original petition of the United States Attorney, the motions of the Defendant and her court-appointed attorney, all briefs, and all the evidence in the case, finds no cause to set aside the Court's original finding that the attorney's original petition set forth facts causing this Court to have reasonable cause to believe that the Defendant was then a person charged with an offense against the United States who may have then been insane or otherwise so mentally incompetent as to have been unable to understand the proceedings against her or to assist in her own defense. The grounds set out as reasons to doubt her sanity are not frivolous but form a reasonable basis or cause for belief that she may be incompetent to aid in her own defense. The motion filed by the United States Attorney is not frivolous and was filed in good faith.

This Court pauses to review the part of the order concerning the time and place for examination of the Defendant. As a result of the complexities of the Defendant's nature and her relationship with the United States Attorney's office in this district, the pressure created by news releases and radio comment concerning this case, the fact that any local psychiatrist appointed to examine the Defendant would almost certainly be subjected to harassment by calls from interested parties on both sides, and the difficulties of a psychological evaluation of so-intense a person as the Defendant, the Court sees no reasonable cause for vacation of any of its order.

In accordance with the above, the motions of the Defendant relating to vacation of the Court's order of commitment for mental examination, except her petition for writ of habeas corpus, are hereby denied.

### APPENDIX A

"§ 4244. *Mental incompetency after arrest and before trial*

"Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation

the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury."

## APPENDIX B

Petitioner, by her brief, certifies the question,

"May a court limit a hearing to specific issues and place the burden of proof upon the defendant where her liberty and property are in question?"

Obviously, this question refers to this Court's hearing granted Mrs. Muncaster on the question of the propriety of vacating the order committing Mrs. Muncaster for mental examination. This Court's position was that § 4244 provides for a procedure which was correctly carried out by this Court, and the burden of proof was on Mrs. Muncaster to show this Court reason for vacating the order in question. The Court of Appeals set out the issues to be tried at that time. While this Court felt that the burden of proof is on a movant to show reason for vacating a previously entered valid order, the findings in this proceeding have been determined beyond a reasonable doubt from the evidence in the case even though no such burden of proof was or should be placed upon the government in such a case in the judgment of this Court.